**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ROBERT J. RUARK,**

    **Petitioner,**

    **v.**

**WARDEN, ROSS CORRECTIONAL**
**INSTITUTION,**

    **Respondent.**

        **CASE NO. 2:12-CV-934**
        **JUDGE EDMUND A. SARGUS, JR.**
        **MAGISTRATE JUDGE ABEL**

**REPORT AND RECOMMENDATION**

Petitioner Robert J. Ruark, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Magistrate Judge on Respondent's *Return of Writ*, and the exhibits of the parties.

Ruark was convicted by a jury trial in the Common Pleas Court for Franklin County, Ohio for the murder of Chad Wolford, felonious assault on Aaron Beckhon, tampering with evidence, and firearm specifications. The Ohio Court of Appeals for the Tenth District affirmed the judgment of the trial court and the Ohio Supreme Court declined petitioner's appeal. Ruark filed a petition for post conviction relief, but he did not file an appeal of the trial court's decision denying that petition. He filed an application to reopen the appeal under Ohio Appellate Rule 26(B), but he did not file an appeal of the appellate court's dismissal of that action. Petitioner now has filed this *pro se* petition for habeas corpus relief. For the reasons that follow, the Magistrate Judge concludes that petitioner has procedurally defaulted his claims or that they fail to provide a basis for relief and, therefore, **RECOMMENDS** that this action be **DISMISSED.**

## Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Franklin County Grand Jury indicted appellant on crimes stemming from a July 4, 2008 shooting. Specifically, he was indicted on two counts of murder in the death of Chad Wolford. He was also indicted for tampering with evidence and the attempted murder and felonious assault of Aaron Beckhon and Christopher Starr. Each count contained a firearm specification. Appellant pleaded not guilty and invoked his right to a jury trial.
>
> Before trial, the court mentioned being informed that appellant wanted a new attorney. Defense counsel stated that there had been "some issues" between appellant and him, but he assured the court that appellant did not want a new attorney. (Tr. Vol.VI, 2.)
>
> Also before trial, plaintiff-appellee, the state of Ohio ("appellee"), filed a motion in limine asking the court to bar evidence of Beckhon's participation in altercations unrelated to the July 4, 2008 shooting. These altercations were against appellant, appellant's girlfriend, and appellant's family, and defense counsel argued that they were relevant to appellant's self-defense claim and would rebut testimony that Beckhon was a "peacemaker" during the shooting. (Tr. Vol.VIII, 145.) Defense counsel also suggested that the altercations indicated that Beckhon had a "vendetta" against witnesses for the defense. (Tr. Vol.VIII, 144.)
>
> The trial court expressed doubt as to whether these other altercations were relevant. Defense counsel declined to elaborate on the issue, and instead suggested that if he could not cross-examine Beckhon about the other incidents, he would subpoena Beckhon for his case-in-chief. In response, the court said it was going to sustain appellee's motion in limine "at this point in time" because it was unable to determine the relevance of the other altercations until defense counsel brought the issue up again in his case-in-chief. (Tr. Vol.VIII, 148.) The court asked defense counsel if he wanted to proffer any evidence, and defense counsel said, "No. I'm fine. As long as you make [Beckhon] available to me ." (Tr. Vol.VIII, 149.) The court agreed to that request, but reiterated that it was granting appellee's motion in limine because defense counsel laid no "foundation as to why these specific unrelated acts are relevant." (Tr. Vol.VIII, 148.)

The jury trial commenced, and the prosecution called Beckhon to testify. Beckhon admitted that he had prior felony convictions. He also testified as follows. Before the shooting occurred on July 4, 2008, Beckhon had been out drinking with his friends Christopher Starr, Chad Wolford, and Wolford's fiancée, Katie Adams. The group eventually ended up at his house at 2613 Osceola Avenue. Later that night, Starr was outside talking on his cell phone when a car, occupied by appellant's brother, Dylan, and sister, Nicki, ran over Starr's foot while pulling into the driveway of appellant's mother, Jeni Ruark, who lived next door. Wolford and Starr confronted Dylan and Nicki. The fight turned physical and included Wolford hitting Nicki. One of Beckhon's friends kicked the car. Beckhon, who was outside during part of the confrontation, and who claimed to have a good relationship with the Ruarks, told Jeni that he would pay for damages to the car.

After Beckhon calmed everyone down, he went back inside his house. Sometime later, he heard several gunshots outside. Beckhon went outside and saw that appellant had arrived at Jeni's house in his white Nissan Maxima and was on Jeni's front porch demanding to know who hit his sister. Beckhon knew appellant because they were once neighbors on a different street, and appellant frequently visited Jeni's house. Wolford admitted to hitting appellant's sister, and another fistfight ensued—this one involving appellant and Dylan on one side, and Wolford and Starr on the other. In an effort to break up the fight, Beckhon pulled Starr off of Dylan.

Meanwhile, Beckhon heard someone yell something about a gun, and he saw appellant firing a gun that may have been a shotgun. Jeni shouted, " 'Robby, stop!' " (Tr. Vol.VIII, 210.) Appellant continued firing. Wolford, Beckhon, and Starr were hit by the gunshots. Wolford and Beckhon walked toward Wolford's Jeep, and Wolford collapsed. Wolford was placed in Beckhon's car so that he could be taken to a hospital, but the police had arrived by that time.

Beckhon was transported to the hospital and treated for multiple gunshot wounds. A detective interviewed him at the hospital. He told the detective that he worked at Worthington Cylinders, although this was untrue because he had been fired. He also told the detective that appellant was the shooter and that appellant was using a handgun.

Before cross-examination, the court indicated that, given Beckhon's testimony that he got along with the Ruarks, it would allow defense counsel to ask about an altercation the witness had

with a cousin of appellant's girlfriend prior to the shooting. The court noted that it would still have to consider "item by item" the admissibility of other altercations involving Beckhon and not related to the shooting. (Tr. Vol.IX, 277.)

During cross-examination, defense counsel asked if Beckhon recalled an incident, prior to the July 4, 2008 shooting, when he shot at a vehicle belonging to a cousin of appellant's girlfriend as it drove away from Jeni's driveway, and Beckhon said no. Defense counsel asked if Beckhon recalled being questioned by the police about that previous incident, and Beckhon said no.

Next, Adams testified for the prosecution. Her testimony about events leading up to the July 4, 2008 shooting tracked that of Beckhon. She added that Wolford was the one who kicked the car occupied by Nicki and Dylan. She also saw the shooting. At trial, she identified appellant as the shooter, and she said he fired a shotgun.

When Adams called 911 after the shooting, however, the dispatcher asked Adams who shot Wolford, and Adams responded "I don't know." (Tr. Vol.XII, 1034.) She also told an officer who responded to the scene that she hoped Beckhon would be able to identify the shooter, and she asked if suspects were going to be tested for gunshot residue. Nevertheless, when she was interviewed by detectives about the incident, she described the shooter as a white male with dark hair and wearing a black shirt, and she stated that the shooter was not involved in the first fistfight. Adams was never asked to pick the shooter out of a line-up or photo array prior to trial.

On cross-examination, defense counsel asked, "you didn't see anybody with a gun * * *, did you?" Adams said, "I did when I walked out onto the porch." (Tr. Vol.XII, 1063.) Defense counsel wanted to know whom she saw, and Adams pointed to appellant.

Damaris Elkins testified that she saw the July 4, 2008 incident from her bedroom window. She first saw Beckhon break up a fight and instruct his friends to leave his neighbors alone. Next, she saw a white Maxima arrive at the scene, and she knew that Jeni's son typically drove that car. Thereafter, she witnessed the shooting that ultimately occurred. She testified that she could not see the shooter's face, but that the shooter was wearing a white or light colored shirt. She called 911 after the shooting. During that phone call, which was admitted into evidence, Elkins told the dispatcher that someone had "just shot another guy" and "went in the house."

She described the shooter to the dispatcher as a "white boy, [who] lives across the street, and he drives a white Maxima." (Tr. Vol.IX, 391.)

Officer Kareem Kashmiry responded to the scene of the shooting and testified as follows. Kashmiry ordered Beckhon and his friends to wait for the medics to arrive instead of transporting Wolford to the hospital themselves. Other officers arrived, and they secured a perimeter around Jeni's house. Two officers pounded on the front door and announced their presence. Although the officers heard "people inside the home rushing around," nobody came to the door. (Tr. Vol.VIII, 109.) The officers determined that there was a "barricade" situation in the house, so they called the S.W.A.T. team. (Tr. Vol.VIII, 110.) After the S.W.A.T. officers arrived, negotiators convinced those inside Jeni's house, including appellant, to exit the residence.

The prosecution established that S.W.A.T. officers entered Jeni's house, and one of them saw a hole in the ceiling of the kitchen. He looked through the hole and found part of a shotgun. Crime scene investigators retrieved the remaining parts of the shotgun in the attic. The investigators found drug paraphernalia in Jeni's bedroom. In her living room, they found drugs, which the parties stipulated to be marijuana. Appellant's left hand tested positive for gunshot residue. Finally, someone from the coroner's office confirmed that Wolford died from his gunshot wounds.

After appellee rested its case, defense counsel did not call any witnesses on appellant's behalf. During closing argument, the prosecutor mentioned that police found drugs and drug paraphernalia in Jeni's house. Defense counsel noted during his closing argument that there was no proof that the drugs and drug paraphernalia in Jeni's house belonged to appellant.

Afterward, the jury found appellant not guilty of murdering Wolford through a purposeful killing, but guilty of murder as a proximate result of the commission of felonious assault. The jury also found appellant guilty of felonious assault upon Beckhon, but there was a hung jury on the felonious assault of Starr. The jury found appellant not guilty of the attempted murder counts pertaining to Beckhon and Starr. Lastly, appellant was found guilty of tampering with evidence and all firearm specifications that attached to the counts for which he was convicted.

Appellant appeals, raising the following assignments of error:

[I.] THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EYEWITNESS EVIDENCE PRESENTED ON BEHALF OF THE STATE WAS INSUFFICIENT TO SUSTAIN THIS FINDING BY PROOF BEYOND A REASONABLE DOUBT AND THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.

[II.] THE TRIAL COURT VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN IT PROHIBITED THE DEFENDANT FROM CROSS–EXAMINING THE STATE'S WITNESS REGARDING THEIR MOTIVES TO FALSELY ACCUSE THE DEFENDANT.

[III.] THE TRIAL [COURT] ERRED WHEN IT DID NOT INQUIRE INTO THE DEFENDANT'S REQUEST FOR [sic] NEW COUNSEL OR MAKE ANY SUCH INQUIRY PART OF THE RECORD.

[IV] IT WAS PLAIN ERROR TO PRECLUDE THE DEFENDANT FROM MENTIONING BAD ACT EVIDENCE ASSOCIATED WITH THE WITNESSES FOR THE STATE BUT TO THEN ALLOW THE STATE TO USE OTHER BAD ACT EVIDENCE AGAINST THE DEFENDANT IN AN ATTEMPT TO PORTRAY HIM AS A BAD PERSON WHO DESERVES TO BE CONVICTED.

[V.] THE DEFENDANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.

*State v. Ruark*, No. 10AP-50. 2011 WL 1782134, at *1-4 (Ohio App. 10th Dist. May 11, 2011).

On May 11, 2011, the appellate court affirmed the judgment of the trial court. *Id.* Represented

by counsel, petitioner asserted on appeal to the Ohio Supreme Court that he was denied a fair

trial and his right to confront the witnesses against him when the trial court prevented him from

cross-examining the State's witnesses regarding their motives and bias; that he was denied right

to counsel of choice when the trial court failed to hold a hearing to permit petitioner from stating

discussing his dissatisfaction with defense counsel; and he was denied effective assistance of trial counsel because his attorney failed to file a motion to suppress evidence; failed to object to other bad acts testimony and hearsay evidence; and failed to disclose he previously represented prosecution witnesses. On October 19, 2011, the Ohio Supreme Court dismissed petitioner's appeal. *State v. Ruark*, 129 Ohio St.3d 1504 (2011).

On November 12, 2010, petitioner filed a petition for post conviction relief in the state trial court. He asserted therein that he suffered a conflict of interest with his attorney; he was denied effective assistance of counsel; and that he was denied the right to a "clerical visit." *Exhibit 24 to Return of Writ,* PageID # 345. On February 22, 2011, the trial court denied Petitioner's post conviction petition. *Exhibit 26 to Return of Writ*. It does not appear from the record that Petitioner ever filed an appeal.

Ruark filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 27 to Return of Writ*. He asserted that he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim regarding improper imposition of consecutive sentences; jury bias; conflict of interest with trial counsel; that he was improperly sentenced immediately after verdict; that evidence supported the lesser offense of manslaughter; and that he was denied a fair trial based on a conflict of interest with defense counsel. *Id.* Ruark filed an amended Rule 26(B) application adding claims that his attorney should have raised on appeal a claim that he was denied a fair trial because the trial court refused to permit defense counsel from making arguments regarding the evidence; the trial court erred by imposing court costs; and cumulative error. *Exhibit 31 to Return of Writ*. On April 10, 2012, the appellate court denied petitioner's Rule 26(B) application. *Exhibit 34 to Return of Writ*. It does not appear that Ruark filed an appeal.

On October 11, 2012, petitioner Ruark filed the petition for a writ of habeas corpus under 28 U.S.C. § 2254 now before the Court. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based on the following grounds, repeated here verbatim:

1. It is violation of Due process of law, the right to a fair trial, and the right to confront witnesses and present a defense when the State has a conflict of interest between its chief witness, also when the trial court prevents the defendant from cross-examining the state witnesses regarding their motives to falsely accuse the defendant and of their bias against him.

2. When an accused expresses dissatisfaction with his counsel, the trial judge must address the accused and give him an opportunity to state the problems he has with his attorney instead of taking counsel's word, even after counsel admits accused wants new attorney, that everything is fine.

3. A defendant does not receive effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 20, Article 1 of the Ohio Constitution when counsel fails to file a motion to suppress, fails to object to inadmissible other acts evidence, fails to object to inadmissible hearsay evidence, and fails to disclose that he previously represented key witnesses for the state and failing to request a Remmer hearing.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.[1]

**Procedural Default**

Two of the more basic principles in habeas corpus law are the requirements that a state prisoner fairly present all of his federal constitutional claims to the state courts, and that the failure to do so prevents a federal court from ruling on the merits of those claims. That is, in

---

[1] Petitioner reverses the numbering of claims one and two in his brief in support of the *Petition*, but this Court will address his claims as they are numbered in the *Petition*.

order for a federal court to decide any such claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). That is so because § 2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State...." Section 2254(c) expands on that requirement, stating that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

The first step in this analysis is to determine how, if at all, Ohio law allows claims such as the ones petitioner is making to be presented to the Ohio courts. Four basic rules come into play here. First, claims which appear on the face of the record must be presented by way of direct appeal; if not, *res judicata* bars them from being raised in any other type of proceeding. *State v. Ishmail*, 67 Ohio St.2d 16 (1981). An exception to this rule exists when an appellant is represented on appeal by the same attorney who tried the case; that attorney need not raise claims of his or her own ineffectiveness even if those claims appear on the face of the record, and such claims are properly raised in a post-conviction proceeding under Ohio Rev.Code § 2953.21. *See State v. Lentz,* 70 Ohio St.3d 527, 530, 639 N.E.2d 784 (1994) ( "*res judicata* does not apply when trial and appellate counsel are the same, due to the lawyer's inherent conflict of interest").

Second, although a direct appeal from an Ohio appellate court decision must be taken to the Ohio Supreme Court within 45 days, Ohio allows a party who fails to meet that time limit to move for leave to file a delayed direct appeal. *See* Ohio S.Ct. Prac. Rule 7.01(A)(4)(a) ("In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the

appellant may file a delayed appeal by filing a notice of appeal and a motion for delayed appeal ...”). Such a motion must be accompanied by an explanation of “the reasons for the delay.” Ohio S.Ct. Prac. Rule 7.01(A)(4)(a)(I). If the Supreme Court were to grant a motion for delayed direct appeal, however, it would consider only those issues raised in the court of appeals. *See Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982), citing, *inter alia, State v. Phillips*, 27 Ohio St.2d 294 (1971); *see also Tanner v. Wolfe*, 2006 WL 3452414 (S.D. Ohio Nov.29, 2006) (“the Ohio Supreme Court does not ordinarily consider claims not raised in the Court of Appeals below”).

Third, Ohio allows claims that do not appear from the face of the record to be raised in a post-conviction proceeding filed under Ohio Rev.Code § 2953.21. That is because such claims, relying on evidence outside the record, cannot be raised on direct appeal, which is limited to claims appearing from the trial court record. *See, e.g., State v. Perry*, 10 Ohio St.2d 175 (1967); *see also State v. Smith*, 125 Ohio App.3d 342, 348 (Butler Co.App.1997) (in the context of a post-conviction petition, “[t]he presentation of competent, relevant, and material evidence outside the record may defeat the application of *res judicata*” ). And, as noted above, a post-conviction petition may also properly raise claims of ineffective assistance of counsel that appear on the face of the record if the defendant was represented by the same attorney at the trial and appellate levels.

Finally, Ohio permits defendants to claim that their appellate attorneys were ineffective. The procedure for raising this kind of claim is a motion to reopen the direct appeal, filed with the state court of appeals under Ohio App. R. 26(B). *State v. Murnahan* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). Such a motion is ordinarily due within 90 days from journalization of the

court of appeals' decision "unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)((1).

**Claim One**

In claim one, petitioner asserts that he was convicted in violation of the Confrontation Clause because the trial court refused to permit him to cross examine witnesses regarding their bias and motive to lie and because the State had a "conflict of interest" with its chief witness, Aaron Beckhon. By "conflict of interest," petitioner asserts that criminal charges had been filed against prosecution witness Beckon, and the prosecution purposely delayed prosecution of those charges until after petitioner's conviction in this case. *Brief in Support*, PageID# 28. Petitioner never presented the latter claim to the Ohio courts. To the extent that claim relies on evidence that is not apparent from the face of the record, the claim of conflict of interest properly would be raised in a petition for postconviction relief, but petitioner did not raise present that claim in history postconviction petition. *See Exhibit 24 to Return of Writ*. Further, from the record it appears that petitioner cannot meet the requirements for filing a successive and untimely post conviction petition. O.R.C. § 2953.23 provides in relevant part:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
>
> (1) Both of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that

applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

Petitioner cannot meet this standard here; consequently, he has waived history right to present a claim that the State had a conflict of interest in federal habeas corpus.

Petitioner also asserts in claim one that he was convicted in violation of the Confrontation Clause because the trial court refused to permit him to cross examine prosecution witness Beckhon regarding his bias and motive to lie. The state appellate court rejected this claim as follows:

[A]pellant argues that the trial court interfered with his right to cross-examine Beckhon. We disagree.

A trial court has discretion to limit the scope of cross-examination. *State v. Treesh*, 90 Ohio St.3d 460, 480–81, 2001–Ohio–4. Therefore, we need not disturb a court's limits on cross-examination absent an abuse of discretion. *State v. Casner*, 10th Dist. No. 10AP–489, 2011–Ohio–1190, ¶ 11. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

Appellant first argues that the trial court abused its discretion by not allowing him to cross-examine Beckhon about a time, prior to the July 4, 2008 shooting, when he shot at a vehicle belonging to a cousin of appellant's girlfriend as it drove away from Jeni's driveway. The court did allow appellant to cross-examine Beckhon about that incident, however.

Next, appellant contends that the trial court abused its discretion by not allowing him to cross-examine Beckhon about other altercations unrelated to the July 4, 2008 shooting. Appellee claims that appellant did not preserve this issue for appeal. It argues that even though the trial court granted the motion *in limine* it filed seeking the exclusion of testimony about Beckhon's other altercations, appellant was required to seek introduction of the testimony at trial so that the court could make a final ruling on the matter.

"At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion *in limine*, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." *State v. Grubb* (1986), 28 Ohio St.3d 199, 203. Here, appellant did not seek to cross-examine Beckhon on any altercations not related to the July 4, 2008 shooting, other than the one where he shot at the car belonging to a cousin of appellant's girlfriend. At one point, appellant indicated that he would seek to introduce the evidence of the other incidents in his case-in-chief, but he did not do so. Thus, appellant did not obtain a final ruling on the admissibility of these other incidents involving Beckhon. Therefore, appellant's arguments regarding the admissibility of those incidents have not been preserved for appeal. *See State v. Sayler*, 10th Dist. No. 08AP–625, 2009–Ohio–1974, ¶ 34–35. For all these reasons, we overrule appellant's second assignment of error.

*State v. Ruark*, 2011 WL 1782314, at *6-7. Thus, the state appellate court explicitly held that petitioner had waived this claim for appellate review because he failed to raise the issue at trial. Having failed to preserve the claim for state appellate court review, petitioner has waived this claim for federal habeas corpus relief.

Moreover, the rule that a criminal defendant must raise his objection at trial constitutes an adequate and independent ground of decision. Ohio's contemporaneous objection rule has been deemed an adequate and independent state ground in numerous Sixth Circuit decisions. *See, e.g., Wogenstahl v. Mitchell,* 668 F.3d 307, 335 (6th Cir. 2012); *Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011). Further, the Supreme Court has indicated that the adequate-and-independent-state-ground doctrine, "[b]y its very definition ... requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris*, 489 U.S. at 264 n. 10.

**Claim Two**

In claim two, petitioner asserts that he was denied a fair trial because the trial judge failed to inquire of him regarding his expression of dissatisfaction with defense counsel. He raised this claim on direct appeal and again in the Ohio Supreme Court. He thereby preserved claim two for federal habeas corpus review.

**Claim Three**

In claim three, petitioner asserts he was denied effective assistance of trial counsel because his attorney failed to file a motion to suppress, failed to object to inadmissible other act evidence and inadmissible hearsay evidence, failed to request a *Remmer* hearing, and failed to disclose that he had previously represented key witnesses for the State. Petitioner did not present the latter two of these claims of ineffective assistance of counsel to the Ohio courts. Further, he

may now no longer do so, under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Moreover, the State of Ohio has a procedural rule that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*. Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351, (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir.2001); *Seymour v. Walke*r, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at

16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

In sum, Petitioner has waived claim one his assertion in claim three that he was denied effective assistance of counsel because failed to request a *Remmer* hearing, and failed to disclose that he had previously represented key witnesses for the State.

Petitioner may still obtain review of these claims on the merits, if he establishes cause for his procedural default and as well as actual prejudice from the alleged constitutional violations.

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule."
> *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard. Nothing in the record indicates that any external factor impeded his ability to pursue proper appeals raising the claims presented in the *Petition*. Additionally, any claimed ineffective assistance of appellate counsel cannot serve as cause for petitioner's procedural default, because Petitioner likewise has waived such claim for review. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) (ineffective assistance of counsel can constitute cause for a procedural default only if that claim has been properly preserved).

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of

one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  The record fails to reflect such circumstances here.

**Merits**

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, ⸺U.S. ⸺⸺, ⸺⸺, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855 (2010) ( "AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light

of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, ––––U.S. ––––, ––––, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, ... [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor,* 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter,* ––– U.S. ––––, –––– –, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks

merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir.2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

**Claim Two**

In claim two, Petitioner asserts that he was denied a fair trial because the trial judge failed to inquire regarding Petitioner's expression of dissatisfaction with his attorney. The state appellate court rejected this claim as follows:

> [A]ppellant argues that the trial court did not sufficiently inquire into his request for new counsel. We disagree.

> In *State v. Deal* (1969), 17 Ohio St.2d 17, the Supreme Court of Ohio held that "[w]here, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and

adequacy of assigned counsel * * * it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record." *Id.* at syllabus. But the court later clarified that this " 'limited judicial duty arises only if the allegations are sufficiently specific; vague or general objections do not trigger the duty to investigate further.' " *State v. Johnson*, 112 Ohio St.3d 210, 2006–Ohio–6404, ¶ 68, quoting *State v. Carter* (1998), 128 Ohio App.3d 419, 423, citing Deal at 19.

In *State v. Erwin*, 10th Dist. No. 09AP–918, 2010–Ohio–3022, ¶ 11, this court concluded that a defendant's complaint that he " 'did not think [appointed counsel] was looking out for his best interest' " was "too general to require the inquiry contemplated in *Deal*." We noted that the trial court would have been required to engage in a further inquiry if the defendant asserted "specific facts" indicating a "specific breakdown in the attorney-client relationship." *Erwin* at ¶ 10.

Here, before trial, the court mentioned being informed that appellant wanted a new attorney. Appellant's defense counsel generally acknowledged that there had been "some issues" between appellant and him. (Tr. Vol.VI, 2.) But he provided no "specific facts" indicating a "specific breakdown in the attorney-client relationship." In fact, defense counsel assured the court that appellant did not want a new attorney after all.

Appellant contends that we cannot rely on the trial court's colloquy with defense counsel because he was not present. But the record suggests appellant's presence, given that, at the conclusion of the hearing, the trial court instructed a sheriff's deputy to "put [appellant] back for right now." (Tr. Vol.VI, 6.) Because there is no affirmative proof in the record that appellant was absent during the discussion about his representation, we shall presume that he was present. *See State v. Shepard*, 10th Dist. No. 07AP–223, 2007–Ohio–5405, ¶ 13.

To conclude, when the trial court asked about the information it received regarding appellant wanting a new attorney, it was not provided with any specific details indicating a breakdown in the attorney-client relationship, and it was even assured that appellant did not want a new attorney. Thus, the trial court was not required

to make any additional inquiry into the matter of appellant's representation, and we overrule appellant's third assignment of error.

*State v. Ruark*, 2011 WL 1782134, at *7.

The record reflects that, on December 7, 2009, prior to trial, the following conversation took place between defense counsel and the trial judge in Ruark's presence regarding hiss desire for a new attorney:

> COURT:  Mr. Cicero, just so I understand what's going on at this point in time, I was informed on Friday that Mr. Ruark wanted new counsel.  Is that not the case?
>
> MR. CICERO:  He can say that, but I believe that's not the case.  I mean, we've – the Court's known we've had some issues, but –
>
> COURT:  Well, everybody has issues in representation.
>
> MR. CICERO:  I understand that.
>
> COURT:  Does he want you to be his counsel or not?
>
> MR. CICERO:  Yes.
>
> COURT:  Then are you prepared to go to trial?
>
> MR. CICERO:  Yes.

*Trial Transcript*, Dec. 7, 2009, PageID# 465-66.  Petitioner does not dispute the appellate court's factual finding that he was present in the court room for this exchange, and even if he did, he would not meet the presumption of correctness afforded factual findings of the state appellate court, as the record supports such a finding.  *See* PageID# 469.  Petitioner also refers to a discussion which takes place during the trial, wherein the prosecutor stated that defense counsel had been fired the prior week and then was re-hired on Monday, stating, "[h]e didn't want to fire him."  *Trial Transcript*, PageID# 576.

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). This right encompasses the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama,* 287 U.S. 45, 53 (1932)). However, "[t]o be sure, the right to counsel of choice 'is circumscribed in several important respects.'" *United States v. Gonzalez–Lopez*, 548U.S. at 144 (quoting *Wheat v. United States*, 486 U.S. at 159).

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159; *Caplin & Drysdale*, 491 U.S., at 624, 626. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. *See Wheat*, 486 U.S., at 159–160. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.*, at 163–164, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, at 160.

*United States v. Gonzalez–Lopez*, 548 U.S. at 151–52. Additionally,

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See *Chambers v. Maroney*, 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982–1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to

the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84
S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). The Sixth Amendment does not guarantee the
defendant a "meaningful relationship" with his attorney. *Id.* at 14. The decision regarding
whether to appoint new counsel at a defendant's request is committed to the sound discretion of
the district court. *See United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

"A defendant who wishes to substitute counsel must notify the trial court of his or her
'serious dissatisfaction with counsel,' and the trial court is then 'obligated to inquire into the
defendant's complaint and determine whether there is good cause for the substitution.'" *Dixon v.
Warden, Southern Ohio Correctional Facility*, 940 F.Supp.2d 614, 625 (S.D. Ohio 2013)(citing
*Benitez v. United States,* 521 F.3d 625, 632 (6th Cir. 2008).   (citations omitted).  A criminal
defendant wishing to substitute counsel must express his dissatisfaction with counsel to the court.
*Benitez,* 521 F.3d at 632 (quoting *United States v. Iles*, 906 F.2d 1122, 1131-32 (requiring the
defendant to "show his hand" by alerting the court of his desire to substitute counsel).  The court
thereafter is required to determine whether there is good cause for substitution of counsel by
balancing" the accused's right to counsel of his choice and the public's interest in the prompt and
efficient administration of justice."  *Benitez*, 521 F.3d at 632 (quoting *United States v. Jennings*,
83 F.3d 145, 148 (6th Cir. 1996).

Here, the record fails does not show that petitioner ever alerted the trial court that he was
requesting substitution of counsel.  Ruark was present before the trial court when defense
counsel assured the court that they had resolved any differences and that history client wanted
him to continue representing him. After that Ruark never alerted the trial court that he wanted to
change counsel.  The record therefore fails to support petitioner's claim.

Claim two is without merit.

## Claim Three

In claim three, petitioner asserts that he was denied effective assistance of counsel because his attorney failed to file a motion to suppress evidence and failed to make proper objections at trial. The state appellate court denied this claim in relevant part as follows:

> [A]ppellant claims that his defense counsel rendered ineffective assistance. We disagree.
>
> The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id., 466 U.S. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id*. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., 466 U.S. at 694, 104 S.Ct. at 2068.
>
> Appellant first argues that his defense counsel was ineffective for not objecting to evidence that drugs and drug paraphernalia were found in Jeni's house. But we already concluded that the drug-related evidence was not proscribed by Evid.R. 404(B) and that there is no probability that the jury would have acquitted appellant had the evidence not been admitted. Therefore, appellant's defense counsel was not ineffective for failing to object to the drug-related evidence.[2]

---

[2] The state appellate court found that evidence regarding drugs and drug paraphernalia found in Jeni's house was admissible under Ohio law and did not prejudice Petitioner as follows:

> Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's criminal propensity. Appellant argues that the drug-related evidence was improper under Evid.R. 404(B), especially considering the absence of any link between him and the evidence. But because the prosecution did not link appellant to the evidence, its admission does not constitute error under Evid.R. 404(B.) *See State v. Robb*, 88 Ohio St.3d 59, 68, 2000–Ohio–275.

Next, appellant asserts that his defense counsel was ineffective for not objecting to the admission of the 911 call Elkins made after the shooting. Appellant notes that the prosecution introduced the call into evidence as an excited utterance under Evid.R. 803(2), but he contends that it was not admissible under that rule because Elkins did not observe the shooting. *See State v. Huertas* (1990), 51 Ohio St.3d 22, 31 (holding that for a statement to be admissible as an excited utterance, the declarant must have had an opportunity to observe the event mentioned in the statement.) According to appellant, Elkins' testimony that she did not see the shooter's face established that she did not actually observe the shooting. But Elkins stated at trial that she saw the shooting, and her statements during the 911 call confirm this fact.

To be sure, it was within the province of the jury to weigh the credibility of Elkins' statements in her 911 call. *See State v. Wallace* (1988), 37 Ohio St.3d 87, 95 (recognizing that the credibility and weight of excited utterances "will, of course, still be judged by the fact-finder"). Nevertheless, Elkins' 911 call was admissible as an excited utterance, and appellant's defense counsel was not required to raise a meritless objection to the admission of that evidence. *See State v. Pariscoff*, 10th Dist. No. 09AP–848, 2010–Ohio–2070, ¶ 37.

Lastly, appellant claims that his defense counsel was ineffective for not filing a motion to suppress Beckhon's and Adams' identification of appellant as the shooter. The failure to file a motion to suppress constitutes ineffective assistance of counsel if, based on the record, the motion would have been granted. *State v. Watson,* 10th Dist. No. 08AP–932, 2009–Ohio–2234, ¶ 9.

When considering whether to admit identification evidence, the trial court utilizes a two-step analysis. *Neil v. Biggers* (1972), 409 U.S. 188, 198–200, 93 S.Ct. 375, 382. The court initially determines whether the identification procedure was impermissibly suggestive. *Id.*, 409 U.S. at 198–99, 93 S.Ct. at 381–82. If so, the court next must determine if the identification was reliable despite its suggestive character. *Id.*, 409 U.S. at 199, 93 S.Ct. at 382. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 2253.

---

Appellant also fails to show that the drug-related evidence affected the outcome of his trial. The prosecution built its case on Beckhon's and Adams' identifications of appellant as the shooter, as well as Elkins' description of the shooter to the 911 dispatcher and the presence of gunshot residue on appellant's hand. Given the minor role that the drug-related evidence played in the trial, and the absence of any link between appellant and the evidence, there is no probability that the jury would have acquitted appellant had the evidence not been admitted.

Here, although the record indicates that Beckhon made this identification from a photo array, there is nothing in the record detailing the pre-trial identification procedure. Thus, we have no basis to determine whether the procedure was impermissibly suggestive or whether the identification was unreliable. Consequently, we decline to review appellant's claim that his defense counsel was ineffective for failing to file a motion to suppress testimony about Beckhon's pre-trial identification. See *Massaro v. United States* (2003), 538 U.S. 500, 504–05, 123 S.Ct. 1690, 1694 (recognizing circumstances where ineffective assistance claims are unreviewable on direct appeal because of inadequacies of the appellate record.)

We also conclude that defense counsel was not ineffective for failing to file a motion to suppress Adams' in-court identification of appellant as the shooter, given that we already determined that the identification was reliable.[3] Likewise, we conclude that defense counsel was not ineffective for failing to seek suppression of

---

[3] The trial court determined that Adams's in-court identification of him as the shooter was admissible as follows:

Appellant first claims that because Adams had no opportunity to identify him from a pre-trial photo array or line-up, the jury could not reasonably rely upon her in-court identification of him as the shooter. But Adams unequivocally implicated appellant at trial from her recollection of the July 4, 2008 shooting. In addition, Adams made the identification under the safeguards of a trial: she provided it under oath, and it was subject to cross-examination. Thus, appellant has not proven that Adams' in-court identification was unreliable just because she was not previously asked to make a pretrial identification from a photo array or line-up.

Appellant also argues that, because Adams was Wolford's fiancée, she was motivated to identify as the shooter whoever was charged with Wolford's murder, regardless of whether that person was guilty or not. The jury could have concluded, however, that Adams' relationship with Wolford provided her an extra incentive to correctly identify his killer.

Furthermore, appellant contends that Adams' statements to police and detectives establish that she did not actually see the shooter. He notes that Adams told detectives that the shooter was wearing a black shirt, in contrast to Elkins' claim that the shooter was wearing a white or light-colored shirt. He also asserts that had Adams actually seen the shooter, she would not have told police that she hoped Beckhon could identify the shooter or suggested that the police use gunshot residue testing to identify the shooter. But given that Adams told the detectives that the shooter was a white male who was not involved in the first fistfight, it was reasonable for the jury to conclude that Adams saw the shooter and that this description of the shooter matched appellant, in corroboration with her in-court identification.

[A]ppellant argues that Beckhon was not credible because his statement to police that the shooter was firing a handgun conflicted with his testimony that a shotgun was used. It was within the province of the jury, as the trier of fact, to accept Beckhon's explanation that he was simply mistaken in initially believing that appellant was firing a handgun. And Beckhon's identification of appellant as the shooter was particularly reliable given that Beckhon knew appellant prior to the incident. *See State v. Monford*, 190 Ohio App.3d 35, 2010–Ohio–4732, ¶ 113.

*State v. Ruark*, 2011 WL 1782134, at *5.

> Beckhon's in-court identification of appellant as the shooter because the identification was made under the same circumstances determined to have made Adams' in-court identification reliable. And, as we already recognized, the fact that Beckhon knew appellant prior to the shooting made his identification of appellant as the shooter reliable. *See Monford* at ¶ 113.

> For all these reasons, we hold that appellant's defense counsel did not render ineffective assistance.

*State v. Ruark*, 2011 WL 1782134, at *9-10.

The United States Supreme Court set out the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness.' " *Poole v. MacLaren*, No. 12–1705, —— F. App'x ——, 2013 WL 6284355, at *5 (6th Cir. Dec.5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir.2009) (quoting *Strickland*, 466 U.S. at 689).

To satisfy the second *Strickland* prong, prejudice, a petitioner "must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Hale,* 512 F. App'x at 520 (quoting *Strickland*, 466 U.S. at 694). "This means [a petitioner] must show a 'substantial, not just a conceivable, likelihood of a different result." *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403 (internal quotation marks and citation omitted)). Thus, this Court's review of ineffective assistance claims under § 2254(d) is " 'doubly deferential." *Id* . (quoting *Pinholster*, 131 S.Ct. at 1403 (internal quotation marks and citation omitted)).

Petitioner has failed to meet this standard here. The state appellate court determined that evidence of drugs and drug paraphernalia was admissible under Ohio law, as was admission of the 911 call Elkins made after the shooting. Therefore, petitioner cannot establish either unreasonable performance or prejudice under the two-prong *Strickland* test. Similarly, the record reflects no basis on which a motion to suppress evidence of Beckhon's or Adams' identification as the shooter.

Claim three is without merit.

**WHEREUPON** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge